IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARVIN M. COGSWELL, )
)
    Plaintiff, )
)
 -vs- ) Civil Action No. 17-1324
)
NANCY A. BERRYHILL,[1] )
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Background

Plaintiff Kenneth Cogswell ("Cogswell") brings this action pursuant to 42 U.SC. § 405(g) for review of the ALJ's decision denying his claim for a period of disability,[2] disability insurance benefits ("DIB") and supplemental security income ("SSI"). He alleges a disability beginning on June 21, 2013. (R. 12)[3] Following a hearing before an ALJ, during which time both Cogswell and a vocational expert ("VE") testified, the ALJ denied his claim. Cogswell appealed. Pending are Cross Motions for Summary Judgment. *See* ECF docket nos. [12] and [16].

### Legal Analysis

1. Standard of Review

---

[1] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.
[2] The ALJ determined that Cogswell meets the insured status requirements of the Social Security Act through December 31, 2013. (R. 14)
[3] Cogswell initially alleged that he was unable to work because of disabling conditions beginning on June 2, 2009 but later amended his onset date. (R. 12)

1

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate. *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986). The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P, appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id. A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

    2. <u>The ALJ's Analysis</u>

At step one, the ALJ found that Cogswell had not engaged in substantial gainful activity since March 20, 2014, the onset date. (R. 14)[4] At step two, the ALJ concluded

---

[4] The ALJ recognized that Cogswell worked after the application but concluded that the work did not rise to the level of substantial gainful activity. (R. 34)

that Cogswell has the following severe impairments: bipolar affective disorder, major depressive disorder, history of attention deficit disorder, impulse control disorder, possible intermittent explosive disorder, possible ("rule out") borderline intellectual functioning, and cannabis dependence in remission. (R. 34)

At step three, the ALJ concluded that Cogswell does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1. (R. 34-36)

Prior to engaging in step four, the ALJ assessed Cogswell's residual functional capacity ("RFC").[5] He found Cogswell able to perform the full range of work at all exertional levels with certain nonexertional limitations. (R. 36) At step four, the ALJ determined that Cogswell had no past relevant work. (R. 43)

Finally, at step five, the ALJ found that, considering Cogswell's age, education, work experience, and RFC, there are significant numbers of jobs in the national economy that Cogswell can perform. (R. 20) For instance, the ALJ explained that Cogswell would be able to perform the requirements of representative occupations such as janitor, hand packager, and landscaper. (R. 43)

   3. Dr. Yeater's Opinion

Cogswell takes issue with the ALJ's treatment of Dr. Yeater's opinion. Specifically, he contends that the ALJ's RFC is not supported by substantial evidence of record because of the alleged lack of an adequate explanation for the weight accorded

---

[5] "RFC" refers to the most a claimant can still do despite his / her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his / her limitations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Additionally, a person's RFC is an administrative finding reserved for the ALJ, not a medical opinion to be rendered by a doctor. 20 C.F.R. §§ 404.1527, 416.927; 20 C.F.R. §§ 404.1546(c), 416.946(c).

4

Yeater's opinion and failure to explain his reason for rejecting portions of Yeater's opinion. After careful consideration of Cogswell's argument and a thorough review of the record, I find the ALJ's treatment of Yeater's opinion to be supported by substantial evidence of record. Consequently, there is no basis for remand on this issue.

Cogswell focuses his argument upon the contention that the ALJ simply ignored sections of Yeater's opinion concerning the ability to maintain attention and concentration for extended periods. *See* ECF Docket No. 13, p. 10-12.[6] I disagree. The ALJ was not required to reference Yeater's itemized findings regarding moderate limitations in maintaining attention and concentration for extended periods and / or working in coordination with or in proximity to others without being distracted by them. The Medical Residual Functional Capacity Assessment provides:

> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how evidence supports each conclusion.

(R. 113) Yeater's opinions regarding "moderate limitations" are the "questions" referenced above. In the space provided for narrative explanation of Cogswell's sustained concentration and persistent capacities and / or limitations, Yeater wrote:

> The claimant is capable of working within a work schedule and at a consistent pace. Claimant can make simple decisions. The claimant is able to carry out very short and simple instructions. The claimant would be able to maintain regular attendance and be punctual.

---

[6] Cogswell devotes no more than two sentences and a quotation from a case, to the additional proposition that the ALJ failed to give an adequate explanation for giving Yeater's opinion significant weight. *See* ECF Docket No. 13, p. 9. This conclusory argument is undeveloped and I decline to consider it for this reason. Further, the ALJ provides a thorough discussion of Yeater's findings, explains that she is a DDS psychological consultant and thus "skilled in reviewing records and assessing the impairments and limitations that are documented therein," explains that Yeater's mental RFC is consistent with the record as it existed at the time she performed her review and with the records developed after her examination, and explains that Yeater's mental RFC is consistent with his own conclusions. (R. 41)

5

(R. 114) Thus, the relevant portion of Yeater's opinion is the narrative statement which provides that Cogswell is capable of working within certain parameters.

Case law confirms that the narrative portions of the assessments, rather than the individual questions, should be the focus of the ALJ's inquiry. *See Wise v. Comm'r. of Soc. Sec.*, 626 Fed. Appx. 357, 360 (3d Cir. 2015) (stating, "we have said that ALJs are not required to give any weight to these fill-in-the blank checklist portions of the RFC assessments and that their focus instead should be on the narrative portions of the assessments where the medical experts expound on their opinions."), *citing, Smith v. Comm'r. of Soc. Sec.*, 631 F.3d 632, 636 (3d Cir. 2015). *See also, Smith v. Colvin*, 821 F.3d 1264, 1268 n. 1 (10th Cir. 2016) (stating that "while the questions in Section One are designed to aid in a doctor's assessment, it is these narrative discussions … that represent the Plaintiff's MRFC."); *Gill v. Berryhill*, Civ. No. 17-430, 2018 WL 2107196, * 5 (W.D. N.C. May 7, 2018) (stating that, "the ALJ properly relied on the state agency psychological consultants' narrative summaries and incorporated them into the RFC."); *Selkirk v. Berryhill*, Civ. No. 16-2811, 2017 WL 5007156, * 4 (D. Kan. Nov. 2, 2018) (noting that "'the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how evidence supports each conclusion;"); and *Dellafiora v. Colvin*, Civ. No. 15-871, 2016 WL 9819855, * 3 (D. N.M. Oct. 27, 2016).

The nonexertional limitations that the ALJ found are consistent with the narrative espoused by Yeater. Remand is not warranted on this issue.

4. <u>Cogswell's Credibility</u>

6

Cogswell also takes issue with the ALJ's findings regarding his credibility. It is well-established that the ALJ is charged with the responsibility of determining a claimant's credibility See *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ's decision must "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." S.S.R. 96-7p. Ordinarily, an ALJ's credibility determination is entitled to great deference. *See Zirsnak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014); *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003).

An ALJ must follow a two-step process when assessing pain: first, he must determine whether there is a medical impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms; and, second, he must evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms to determine the extent to which they limit the plaintiff's functioning. (R. 37) Pain alone, however, does not establish disability. 20 C.F.R. § 404.1529(a); 416.929(a). Allegations of pain must be consistent with objective medical evidence and the ALJ must explain the reasons for rejecting non-medical testimony. *Burnett v. Comm'r. of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000).

In evaluating whether a plaintiff's statements are credible, the ALJ will consider evidence from treating, examining and consulting physicians; observations from agency employees; and other factors such as the claimant's daily activities; descriptions of the pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication; and other measures used to relieve

7

the pain. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 96-7p. The ALJ will also look at inconsistencies between the claimant's statements and the evidence presented. *Id.* Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about his or her limitations or symptoms is less than fully credible. *See Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002).

Here, I find that the ALJ followed the correct analysis for assessing credibility. He set forth the two-step process identified above, assessed the impairments which could reasonably be expected to produce Cogswell's pain and then evaluated the intensity, persistence, and limiting effects of Cogswell's symptoms to determine the extent to which they limit Cogswell's functioning. (R. 37-40) Ultimately, the ALJ stated that Cogswell's "medically determinable impairments could reasonably cause symptoms, but I do not completely accept claimant's statements concerning the intensity, persistence and limiting effects of these symptoms. They do not demonstrate that claimant could not engage in sustained work within the parameters of the residual functional capacity determined herein." (R. 37)

Additionally, I find the ALJ's determination is supported by substantial evidence of record. For instance, the ALJ noted that Cogswell left prior jobs in order to pursue greater opportunities elsewhere or because of economic layoffs rather than for medical reasons. (R. 38) Indeed, Cogswell himself indicated that he performed some weeding and snow shoveling maintenance work for a church but hadn't worked in several months because of lack of need. (R. 60) His employment at another company was terminated after a warning for swearing at a coworker, another for being late and another for helping a customer when he was not supposed to. (R. 63) Another job was

8

terminated after Cogswell was injured on the job. (R. 66-67) Consequently, I find that substantial evidence supports the ALJ's conclusion that Cogswell "has not established a work record that would suggest that he left and remains out of the work force solely for medical reasons." (R. 38) Cogswell offers no argument with respect to the ALJ's conclusion in this regard.

The ALJ also found that Cogswell functioned well while on medications. (R. 39) (stating, "[i]n May 2014, claimant told Dr. Napoli that he was doing very well on his medications, and that he was not having angry outbursts.") Records from Dr. Napoli confirm this. (R. 293) Napoli writes, "[h]e is not having any angry outbursts or manic-like symptoms. He is not depressed. His attention and concentrating ability are fine." (R. 293) Cogswell himself acknowledged that his concentration was "OK, as long as I am on my meds." (R. 304) The ALJ also noted that Dr. McGorrian, who treated Cogswell in 2014, found "no evidence of any medication side effects." (R. 326) Yet Cogswell takes issue with the ALJ's finding regarding side effects, noting that he described sedation as a side effect to nurse practitioner Last on June 25, 2015. (R. 303) I agree that the record supports that Cogswell made such a report to Last, but a single report to a nurse practitioner does not negate the ALJ's conclusion that Cogswell did not report any side effects to Dr. McGorrian or Dr. Napoli. Further, it is the ALJ's duty to weigh conflicting evidence. See *Love v. Astrue*, Civ. No. 12-1923, 2014 WL 4915998, * 1 (M.D. Pa. Sept. 30, 2014). Here, substantial evidence supports the ALJ's conclusion that Cogswell functioned well while on medication.

Similarly, the ALJ noted that Cogswell's prescription for Adderall was stopped when a drug screen tested positive for marijuana. (R. 38) He subsequently presented to

9

a psychiatric facility for an assessment related to suicidal ideation and significant depression. (R. 272) Cogswell's mood was stabilized through medication and he was discharged approximately one week later. During the period of hospitalization, Cogswell's GAF[7] increased from 15-20 upon admission to 50 at discharge. (R. 275) The ALJ accorded these ratings "only some weight due to the brevity of treatment" but found them to be "indicative of claimant's ability to gain significant positive response when compliant with treatment." (R. 38) Cogswell faults the ALJ for this conclusion, urging that it is improper to consider that a person who is stable on medication might be stable in a work environment. *See* ECF Docket No. 13, p. 14. Yet considering positive results from treatment and medication is appropriate. See 20 C.F.R. § 416.929(c)(3)(iv); *Seney v. Comm'r. of Soc. Sec.*, 585 Fed. Appx. 805, 809 (3d Cir. 2014); *Dorio v. Berryhill*, Civ. No. 15-6713, 2017 WL 5623348, * 1 n. 2 (E.D. Pa. Nov. 22, 2017). I find no error with the ALJ having given weight to evidence indicating that Cogswell improved when compliant with treatment and medication.

The ALJ also considered Cogswell's claims of angry outbursts. The ALJ referenced Cogswell's testimony that "he has trouble working with other people and controlling his temper" and that he tends to hit himself "or smash objects due to his uncontrolled temper." (R. 36-37) Ultimately, the ALJ concluded that "[t]he claimant's testimony regarding ongoing angry outbursts is directly contradicted by probative medical evidence of record, and I find that the claimant has likely exaggerated this symptom, at least in part." (R. 40) In support of his conclusion, the ALJ pointed to Dr.

---

[7] A Global Assessment of Functioning score "allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness." *Belfon v. Berryhill*, 2018 WL 4691049, * 4 (M.D. Pa. Sept. 28, 2018)

Napoli's statement, approximately one month after discharge from the hospital, that Cogswell was doing well on medication and "was not having angry outbursts." (R. 38)[8] The ALJ also noted Dr. McGorrian's observation that Cogswell does not meet the criteria for intermittent explosive disorder. (R. 40) Cogswell's activities of daily living also undercut the claim of angry outbursts. The ALJ observed that "he lives with a friend with no reported conflict and spends his days playing video games and listening to music – behavior that does not reflect the fierce rages reported by claimant's mother and within his own testimony." (R. 40) Yet the ALJ did not totally discount reports of angry outbursts. Indeed, he found "reason to question Dr. Yeater's … conclusion that the claimant was able to behave in a socially appropriate way." (R. 40) Rather, in resolving the conflicting evidence, the ALJ decided that a job involving only simple, routine tasks in a non-production oriented environment with no public contact would minimize any problems that he has in this area. (R. 40) Thus, although he may not have mentioned every piece of evidence in the record regarding angry outbursts, I find his decision to be substantially supported by the evidence and well-reasoned.

      An appropriate order shall follow.

---

[8] The ALJ found telling that Napoli set a follow-up appointment four months later which he found to be "strong circumstantial evidence showing that the mental health provider most familiar with his case saw no need to see the claimant on a more urgent or frequent basis." (R. 39) Cogswell objects, citing to case law which questioned the relevance of infrequent medical visits. *Id.*, *citing, Weinberg v. Colvin*, 2013 WL 3972651, * 5 (W.D. Pa. July 31, 2013) and *Newell v. Comm'r. of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003). Cogswell's contentions are not persuasive. Those cases focus upon the "questioned relevance" of an individual's failure to seek or pursue regular medical treatment. In this instance, the ALJ found persuasive Napoli's observation that Cogswell was doing very well on his medications, that he was not having angry outbursts, that his attention and concentration were fine, and that he was no longer depressed. (R. 39) It is the treating physician's decision to delay a follow up for four months. I find this to be materially different from an ALJ questioning why a claimant would have infrequent medical visits. Under the circumstances, the ALJ's conclusion is fair. Further, Cogswell's reference to treatment with Last did not begin until nearly a year following Napoli's May 2014 appointment and lasted only a short time.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARVIN M. COGSWELL )
    Plaintiff, )
 )
  -vs- ) Civil Action No. 17-1324
 )
NANCY A. BERRYHILL,[9] )
COMMISSIONER OF SOCIAL SECURITY, )
 )
    Defendant. )

AMBROSE, Senior District Judge.

# ORDER OF COURT

Therefore, this 5th day of November, 2018, it is hereby ORDERED that the decision of the ALJ is affirmed. It is further ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 12) is DENIED and Defendant's Motion for Summary Judgment (Docket No. 16) is GRANTED.

                              BY THE COURT:

                              /s/ Donetta W. Ambrose
                              Donetta W. Ambrose
                              United States Senior District Judge

---

[9] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.